# United States District Court
# Northern District of Indiana
# Hammond Division at Lafayette

JESSE SNIDER, )
 )
      Plaintiff, )
 )
v. ) Civil Action No. 4:09-CV-37 JVB
 )
TODD PEKNEY, *et al.*, )
 )
      Defendants. )

## OPINION AND ORDER

Plaintiff Jesse Snider is a former postal worker who filed suit against numerous defendants, alleging a conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1983. Although his claims stem from a police search of his property, Snider's suit also includes claims against several postal workers for conspiring to deprive him of his job and against Special Agent George Vasilko for searching Snider's work locker. This matter is before the Court on two Motions for Summary Judgment and Motions to Dismiss (DE 25, 27) filed by the postal workers and Vasilko.

**A. Legal Standard**

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party supports its motion for summary judgment with affidavits or other materials, the burden of showing that an issue of material fact exists thereby shifts to the non-moving party. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,* 791 F.2d 548, 558 (7th Cir. 1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts *that might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir. 1988), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50.

**B. Background and Facts**

Jesse Snider is a former employee of the United States Postal Service ("USPS"), where

he was employed as a mail processing clerk at the Main Post Office Processing and Distribution Center in Lafayette, Indiana.[1] Snider's Complaint sets forth detailed facts involving numerous defendants. For the purpose of ruling on the present motions, only those facts that are pertinent to Snider's claims against the USPS defendants and George Vasilko will be summarized herein.

Snider alleges in his Complaint that on October 27, 2007, Officers of the Indiana Department of Natural Resources, the Carroll County Sheriff's Department, and the Flora Police Department searched the property surrounding his Carroll County home. According to Snider, one officer involved in the search used false information in order to obtain a warrant to search the barn on Snider's property.

A few days later, the manager of the Main Post Office Processing and Distribution Center in Lafayette, Indiana contacted George Vasilko, a special agent with the Office of the Inspector General ("OIG"), the independent investigatory arm of the USPS. After Vasilko was informed that Snider had been arrested on charges related to weapons and contraband, he contacted the Carroll County Prosecutor's Office to obtain a copy of the probable cause affidavit.

As a USPS employee, Snider had been assigned a locker at the Processing and Distribution Center. At the time, the USPS Administrative Support Manual ("the ASM") provided that:

> All Postal Service-owned or furnished property under the custody or control of

---

1   With the exception of two statements, Snider does not dispute the facts recited in Vasilko's brief in support of summary judgment. (DE 37 at 2). Similarly, with regard to Snider's allegations against the postal defendants, *infra*, Snider does not dispute any of the facts recited in the postal defendants' motion for summary judgment. Therefore, for the purposes of establishing undisputed facts on summary judgment, the Court looks to Snider's complaint, Vasilko's brief in support of summary judgment, and the postal defendants' brief in support of summary judgment.

> the Postal Service, including that individually assigned to postal personnel, is for
> official use only. This property and its contents are at all times subject to
> examination and inspection by duly authorized postal officials in the discharge of
> their official duties.

(DE 26, ¶ 6). When he was assigned the locker, Snider signed a keycard acknowledging that the locker was suspect to inspection. In addition, a union contract provided that if the locker was searched, either the employee or his union steward must be present. Although Snyder's locker did not have a padlock, it was locked, and a key was given to both Snider and USPS management.

After Vasilko arrived in Lafayette, he had the USPS maintenance manager use a copy of the key to open Snider's locker. Vasilko then searched the locker, and, finding nothing, closed it. Present during Vasilko's search were the USPS maintenance manager, a union representative, and an officer of the Indiana Department of Natural Resources ("DNR"). Meanwhile, on November 28, 2007, USPS supervisory employee Karin Nowatzke indefinitely suspended Snider from the USPS based on the October 27, 2007 incident at Snider's home.

Sometime around April 2008, the criminal charges against Snider were dropped following a Judge's ruling that the initial warrantless search of Snider's property was improper under the Fourth Amendment, which, in turn, negated the warrant that was subsequently issued based on information uncovered in the initial search. This decision was upheld on appeal.

On August 28, 2008, Lori Anderson, a USPS manager, conducted an interview with Snider. During the interview, Snider alleges that Anderson "attempted to secure inculpatory admissions from Snider concerning the already-dismissed charges." (Complaint ¶ 61). Three days later, Anderson recommended that Snider be removed from his job with the USPS. On November 5, 2008, Brian Fisher, a supervisory employee of the USPS, issued a letter of decision

removing Snider from the USPS. Because Snider was a "preference eligible employee," he had the right to appeal a final decision to terminate his employment to the Merit System Protection Board ("MSPB"). Snider did so and on March 10 and April 1, 2009, a MSPB hearing was held before an ALJ, who affirmed Snider's removal. Snider alleges that Nowatzke and Fisher both testified at the MSPB hearing and that their testimony was entirely based upon the evidence that had been unlawfully obtained in October 2007 and on the charges that were dropped in the spring of 2008.

On April 25, 2009, Snider filed a sixteen count suit in the Carroll County Circuit Court alleging, *inter alia*, that: (1) Vasilko conspired with various police officers in order to deprive Snider of his constitutional rights under 42 U.S.C. § 1983 when Vasilko searched Snider's locker without a warrant; (2) Anderson conspired with various police officials in order to violate Snider of his constitutional rights under 42 U.S.C. § 1983 when she conducted her interview with Snider; (3) Nowatzke and Fisher conspired with various police officials in order to violate Snider of his constitutional rights under 42 U.S.C. § 1983 when they deprived Snider of his employment and testified against Snider at the MSPB hearing; (4) Anderson, Nowatzke, and Fisher conspired with various police officials in order to violate Snider of his constitutional rights under 42 U.S.C. § 1983 by using Snider's image and name in a promotional advertisement for a local news station; and (5) Anderson, Nowatzke, and Fisher tortiously engaged in intentional infliction of emotional distress.

**C. Discussion**

**(1)** *Vasilko's Motion for Summary Judgment*

Snider characterized Vasilko's search of his locker as follows: "Vasilko . . . upon learning that Snider had been arrested and charged, aided and abetted the state's law enforcement officers in a[n] . . . illegal search of Snider's work locker which, ultimately, yielded precisely nothing." (DE 37 at 2). Vasilko, however, argues that he is entitled to summary judgment because Snider had no expectation of privacy in his work locker and that Vasilko has qualified immunity from suit because his conduct did not violate a clearly established statutory of constitutional right.

In order to prevail on his § 1983 claim against Vasilko, Snider must show that: (1) he had a constitutionally protected right, (2) he was deprived of that right in violation of the Constitution, (3) Vasilko intentionally caused that deprivation, and (4) Vasilko acted under color of state law. *Cruz v. Safford*, 579 F.3d 840, 843–44 (7th Cir. 2009). Because Vasilko is not a state official, he can only be liable under § 1983 if he conspired with a state actor. *See Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Additionally, as a government official, Vasilko is entitled to qualified immunity and is shielded from liability, unless Snider can show a violation of a constitutional right, and, "if successful in showing a constitutional violation, demonstrate that the right was clearly established at the time of the alleged violation." *Id.* at 764. Therefore, the key question is whether the locker search violated the Fourth Amendment. If it did not, Snider's claim against Vasilko fails on both qualified immunity grounds and on substantive grounds based on the tests

for § 1983 liability and for conspiracy liability under § 1983.

Vasilko argues that the locker search was a workplace search pursuant to *O'Connor v. Ortega*, 480 U.S. 709 (1987), and therefore was not subject to the traditional probable cause and warrant requirements of the Fourth Amendment. Under *O'Connor*, courts must first consider whether the public employee has a reasonable expectation of privacy in his or her workplace. *Id.* at 717. If so, courts must then determine whether a particular search is 'reasonable' under the circumstances by balancing the public, governmental, and private interests at stake in the situation. *Id.* at 722–23. Given the societal expectations of privacy in one's place of work, a public employee may have a reasonable expectation of privacy, depending on the circumstances. *Id.* at 717. Yet, because of "operational realities of the workplace" some employees' expectations of privacy may be unreasonable. *Id.* Hence, assessments of public employees' privacy expectations must be made on a case-by-case basis. *Id.* at 718.

In *O'Connor*, for instance, the Court found that the public employee had a reasonable expectation that his office was private because he had occupied the desk for 17 years, kept only personal items in the desk, and his employer had no regulations concerning employees' desks. *Id*. at 718–19. In contrast, in *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 671 F.Supp. 497 (S.D. Ohio 1987), the court found that USPS employees did not have a reasonable expectation of privacy in their lockers, stating that "[a]pplicable postal regulations, as well as the express terms of locker assignment agreements and collective bargaining agreements, provide for nonconsensual inspection of employee lockers by post office personnel and negate the existence of a reasonable expectation of privacy." *Id.* at 501.

Similarly, under the facts of this case, Snider's expectation of privacy in his USPS locker

7

was not objectively reasonable. It is undisputed that Snider signed a keycard acknowledging that his locker was subject to inspection and that USPS management maintained a copy of the locker key. Further, the ASM provided that the locker and its contents were subject to inspection by duly authorized personnel in the discharge of their duties. Because the USPS regulations mandate that "[t]he Office of Inspector General will investigate all allegations of violations of postal laws or misconduct by postal employees," 39 C.F.R. § 233.1(b)(1)(i), Vasilko qualifies as authorized personnel discharging his duties for the purposes of the ASM.[2] Under the circumstances, no reasonable person would expect the locker to be private from USPS searches and, therefore, Snider cannot claim a Fourth Amendment violation with regard to the locker search. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois,* 439 U.S. 128, 143 (1978) ("We have held that 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'")).

Snider also argues that the presence of a DNR officer converts Vasilko's search from a employer search to a officer search. However, this argument was rejected in *Gossmeyer v. McDonald*, 128 F.3d 481 (7th Cir. 1997), in which the Court of Appeals found that the presence of numerous officers did not transform an agency's work-related search into a criminal search

---

2   Snider argues that Vasilko's search of the locker is not an employee search under *O'Connor* because Vasilko is not an employee of the USPS but, rather, of the OIG, an independent agency. This argument is without merit. The OIG is an independent office within the postal service that is statutorily charged with investigating misconduct among USPS employees. 39 C.F.R. § 230.1. The OIG's purpose is to prevent fraud, waste and abuse within the USPS. 39 C.F.R. § 230.1(d). As such, the OIG's duties are so entangled with the operation and efficiency of the USPS, that Vasilko's search cannot reasonably be characterized as anything other than a workplace search based on his position with the OIG.

requiring probable cause and a warrant. The agency search in *Gossmeyer* was conducted by personnel from the Illinois Department of Children and Family Services' Office of the Inspector General. *Id*. at 484. That organization, like the USPS' OIG, had a statutory duty to inspect misconduct on the part of agency employees. *Id.* at 492. Though numerous law enforcement officers were present for the search in *Gossmeyer*, the Court of Appeals noted that the only persons who actually conducted the search were agency personnel. *Id.* ("[W]e find it most significant that Gossmeyer's complaint states that of all these officials, only DCFS personnel . . . actually conducted the search."). Further, the Court of Appeals found that prior case law rejected the notion that the presence of law enforcement officers and the possibility that the search could uncover information leading to a criminal charge inevitably converted a search into a law enforcement search requiring probable cause and a warrant. *Id.* at 492–94 (citing *U.S. v. Nechy*, 827 F.2d 1161, 1163 (7th Cir. 1987) (search found to be workplace search despite the presence and assistance of narcotics detectives because the search was objectively reasonable despite the subjective motives of the agency personnel); *Shields v. Burge*, 874 F.2d 1201, 1202 (7th Cir. 1989) (search found to be a workplace search despite the possibility of uncovering evidence of criminal wrongdoing)).

Like the search in *Gossmeyer*, Snider alleges that the only individual who conducted the locker search was Vasilko. The mere presence of the DNR officer and the possibility that there could have been incriminating evidence recovered from the locker do not take the search out of the rubric of employer searches under *O'Connor*.

Having previously determined that no constitutional right was violated because Snider's expectation of privacy in his work locker was not reasonable, the Court need not consider the

9

second part of the qualified immunity test. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 365 (7th Cir. 2005) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Because Snider is unable to show a violation of any constitutional right, Vasilko is entitled to summary judgment on all of Snider's claims against him based on qualified immunity.

**(2)** *The Postal Defendants' Motion for Summary Judgment*

Anderson, Nowatzke, and Fisher ("the postal defendants") argue that they are entitled to summary judgment because Snider's § 1983 claims against them are proscribed by the Civil Service Reform Act of 1978 ("the CSRA") and because Snider's intentional infliction of emotional distress ("IIED") claim against them is barred by sovereign immunity.

"The CSRA established a comprehensive system for reviewing personnel action taken against federal employees." *U.S. v. Fausto*, 484 U.S. 439, 455 (1988). "By creating the CSRA, Congress implicitly repealed the jurisdiction of federal district courts over personnel actions arising out of federal employment." *Richards v. Kiernan*, 461 F.3d 880, 883 (7th Cir. 2006) (citing *Paige v. Cisneros,* 91 F.3d 40, 43 (7th Cir. 1996)). The CSRA is a comprehensive administrative scheme that prevents federal employees from bringing *Bivens* actions against his or her supervisors based on constitutional violations having to do with adverse personnel decisions. *Klein v. Potter*, 43 Fed. Appx. 960, 961 (7th Cir. 2002). As a result, "[f]ederal employees must raise employment-related constitutional challenges through the Merit Systems Protection Board and appeal to the Federal Circuit." *Kannaby v. U.S. Army Corps of Engineers*, 53 Fed. Appx. 776, 779 (7th Cir. 2002) (citing 5 U.S.C. § 7703).

Snider argues that his claims are not barred by the CSRA because "the constitutional

violation [he] is asserting was not the personnel action, but the Postal Defendants' active conspiracy and collaboration with the Police Defendants to 'punish' Snider for his audacity in labeling their illegal search for what it was." (DE 31 at 7). In other words, Snider argues that the postal defendants' conduct in terminating Snider and testifying against him at his MSPB hearing was evidence of a conspiracy to deprive him of his constitutional rights.

Yet the focus of this Court in assessing whether the CSRA precludes Snider's claims is not the conspiracy, but the constitutional violation itself. The absence of any underlying violation of Snider's rights precludes his ability to succeeding on a conspiracy claim. *See Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)); *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n.2 (7th Cir. 1975) (finding that § 1983 does not provide a cause of action for conspiracy per se and that "the gist of the [§ 1983] cause of action is the deprivation and not the conspiracy.").

The constitutional violation Snider alleges against the postal defendants is entirely related to the personnel action against him, thus bringing his Complaint within the purview of the CSRA. For example, Snider's Complaint states that, with respect to Anderson, his constitutional rights were violated during her interview with him before she recommended that his employment be terminated. With respect to Nowatzke and Fisher, Snider alleges that the constitutional violation occurred when they deprived him of his employment. In fact, the relief Snider requests from this Court includes the removal of references concerning his arrest, suspension, and removal from his USPS personnel files, and the reinstatement of his employment with the USPS. Having placed the blame on the postal defendants for the loss of his job, and given that the

11

alleged constitutional violations were incident to Snider's firing, it seems "contradictory and disingenuous" for Snider to now deny that his claims against the postal defendants bear no relation to the termination of his employment with the USPS. *Sculimbrene v. Reno*, 158 F.Supp.2d 1, 5 (D. D.C. 2001).

Additionally, the fact that Snider alleges a conspiracy with non-USPS defendants does not take his claims outside the framework of the CSRA. In *Hall v. Clinton*, 235 F.3d 202 (4th Cir. 2000), the Fourth Circuit Court of Appeals found that the CSRA precluded a § 1985 conspiracy suit even though the alleged conspiracy involved an official who was not the plaintiff's supervisor. *Id*. at 206, quoting *Broughton v. Courtney,* 861 F.2d 639, 641 (11th Cir. 1988) ("Allowing a federal employee to sue those people who may have influenced a supervisor's decision to take a certain personnel action 'would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum.'").

Because Snider's position as a federal employee is central to the § 1983 claims in counts four and six of his Complaint, the CSRA precludes Snider's claims against the postal defendants in this forum. As a result, the postal defendants are entitled to summary judgment on those claims.

However, Snider brought another § 1983 claim against the postal defendants in count seven of his Complaint, in which he alleges that they conspired with the police defendants and a television station to create a promotional advertisement for a local news show featuring Snider. Snider has presented absolutely no evidence to support this allegation with regard to the postal defendants. When considering a motion for summary judgment, "the district court is not required

to scour every inch of the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003)). Therefore, the postal defendants are entitled to summary judgment on this claim as well.

The final matter at issue is Snider's IIED claim against the postal defendants, which they argue is barred by sovereign immunity. According to the postal defendants, Snider's exclusive remedy is provided by the Federal Tort Claims Act ("FTCA") because the postal defendants were acting within the scope of their employment when the alleged IIED took place.

The FTCA authorizes suits against the United States "for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the Westfall Act, which amended the FTCA in 1988, the Attorney General of the United States may certify that a federal employee was acting within the scope of his or her employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). The United States will then be substituted as a defendant in the case. "In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3).

The postal defendants allege that substituting the United States would be futile because the United States has not waived its sovereign immunity for IIED claims. Nonetheless, this Court and the postal defendants must comply with the procedural scheme set forth in the

Westfall Act in determining whether Snider's IIED claim should have been brought against the United States. Therefore, the postal defendants will be given thirty days from the date of this Order to show proof of compliance with the Westfall Act's certification process pursuant to 28 U.S.C. § 2679.

**D. Conclusion**

For the foregoing reasons, Defendant George Vasilko's Motion for Summary Judgment [DE 25] is GRANTED. Because no claims against Defendant Vasilko remain, he is dismissed as a defendant in this lawsuit.

Defendants Lori Anderson, Karin Nowatzke, and Brian Fisher's Motion for Summary Judgment [DE 27] is GRANTED with respect to counts four, six, and seven of Snider's Complaint, and DENIED without prejudice with respect to count sixteen. The postal defendants are given leave to show proof of compliance with the Westfall Act's certification process within thirty days, and the Court will take up the matter once the certification issue is resolved.

SO ORDERED on February 25, 2010.

   s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE